

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-6035
Re: Consideration of certain
deductions claimed by the
Estate of Caswell O. Edwards,
Deceased, under Texas In-
heritance Tax Statutes.

From your letters of May 22 and June 7, 1944, and other instruments furnished by you, we state the following facts:

Caswell O. Edwards had been married twice; his first wife died many years ago. He and one son, Crawford O. Edwards, operated a large ranch, the father owning two-thirds and the son one-third.

In 1918, when he was about 67 years of age, Edwards married a second time, and this wife, Mollie C. Edwards, is still living.

No accounting was had between Edwards and his son upon the death of the first wife, and the business was continued in the same manner as before. Both the father and the son made withdrawals from the partnership from time to time, and no complete record was kept of them.

Several years before his death Edwards made a will in which he provided that his wife, Mollie C. Edwards, should receive a life income of $250.00 a month, and that the balance of the property should go to his son. His wife

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George H. Sheppard, Page 2

learned about this will and consulted with attorneys with
the object of getting the will changed or of being pre-
pared for a contest of the will upon the death of Edwards.

Then Edwards executed a general power of attorney
to his son, who immediately began to dispose of large amounts
of the partnership property. It appears that this was con-
trary to Edwards' wishes and views, and a suit was filed by
him against the son to restrain further disposition of the
partnership property and to cancel the power of attorney.
The son filed a cross-action seeking an accounting of part-
nership affairs from the date of his mother's death, some
time prior to 1918.

At this time, January 1940, Mrs. Edwards made a
contract with a firm of attorneys, "to represent me in all
matters relating to the interest I own in the community es-
tate of my husband, C. O. Edwards, and myself, and any and
all other properties or right I may have by reason of con-
tracts, conveyances, wills or otherwise in the property of
C. O. Edwards." This contract further provided:

> "For such services to be rendered, I hereby
> transfer and assign unto said attorneys an un-
> divided one-fourth interest in any and all prop-
> erties I may obtain, whether by suit, compromise
> or conveyance from.C. O. Edwards or his estate,
> and from our community estate."

With affairs in this condition, Edwards decided to
revoke his will referred to above, and to distribute his
property. On April 27, 1940, he executed an instrument con-
veying to his wife, Mollie C. Edwards, property valued at
$186,166.91, and conveying the balance of his property to
his son. The conveyance reserved to Edwards all rents on
the real estate during his lifetime. This conveyance was
ratified by the court in the accounting suit in August 1940.
The separate property, and the community property of Edwards
and Mollie C. Edwards, were so intermingled that it was im-
possible to separate them. This was further complicated by
the withdrawals that had been made by Edwards and his son
from the partnership business. The final result, the con-
veyance of April 27, 1940, seems to have been an arbitrary

division of the properties regardless of whether they were separate or community.

Edwards died on April 10, 1941. Mrs. Edwards and her attorneys considered that the work of the attorneys had been the cause of her receiving the properties transferred to her, and, after the death of Edwards, she transferred to the attorneys one-fourth of the properties which she had received.

It is conceded by representatives of the estate that the transfer of April 1940 was made in contemplation of death, and is therefore taxable; and that it may be considered as a transfer of Edwards' separate property.

The question presented is:

Should inheritance tax be computed upon the entire amount of property which passed to Mrs. Edwards under the conveyance of April 27, 1940, or should the attorneys' fees be deducted before computing the tax?

Article 7117, V.A.C.S., levies a succession tax upon property which shall be conveyed in contemplation of death as well as upon property which shall pass by will or by the laws of descent and distribution.

Article 7125, V.A.C.S., defines "the only deductions permissible under this Law" as: (1) the debts due by the estate; (2) funeral expenses; (3) expenses incident to the last illness of the deceased, which shall be unpaid at the time of death; (4) all taxes due at the time of the death of the decedent; (5) attorney's fees and Court costs accruing in connection with the assessing and collection of inheritance taxes; and (6) an amount equal to the value of any property forming a part of the gross estate situated in the United States received from any person who dies within 5 years prior to the death of the decedent, etc.

These deductions are quite specifically defined, and the attorney's fees here in question do not come within the terms of any of them. The taxpayer, however, is contending that she did not receive $186,166.91 worth of property, but only three-fourths of this amount; that her situation is analogous to receiving property encumbered by a mortgage.

Honorable George H. Sheppard, Page 4

We are unable to find any case authority in Texas directly on the question presented, and there seem to be but few such cases from other jurisdictions. These, however, appear to establish the rule that amounts expended by heirs or legatees or donees in an attempt to establish their alleged rights cannot be deducted in making an assessment for succession tax purposes. See 96 A.L.R. 626, 61 C.J. 1705 Sec. 2593. So also, the amount paid to attorneys by the donee of a gift cause mortis, in protecting the gift against the claim of the administrator that the property belongs to the estate, is not deductible from the amount subject to inheritance taxes against the donee. People v. Estate of Nellie Klein, 359 Ill. 31, 193 N.E. 460, 96 A.L.R. 622. The court there said:

"The attorney fee was not incurred by the administrator and was not a part of the costs and expenses of administration. It may have depleted the gift which the donee was entitled to receive, but did not diminish its amount at the time it was made. The gift was established by the facts shown to exist at the time it was made, and if Margaret Miller took at all she took at that time, and it necessarily follows that she took the whole amount of the gift. The measure of the tax was dependent upon the value of the interest she received by the gift regardless of whether or not she was subsequently called upon to incur an expense in protecting her right to it."

Likewise it has been held that expenses of heirs in successfully attacking a will may not be deducted in determining the amount subject to inheritance tax. 28 Am. Jur. 123, Sec. 247.

Cases of compromise of a will contest are closely analogous to the question herein considered. Note the language of the Illinois Supreme Court in Re Graves Estate, 242 Ill. 212, 89 N.E. 978, 979:

"The tax is not upon the estate of the decedent, but upon the right of succession, and it accrues at the same time the estate vests -- that is, upon the death of the deceased. Questions may arise as to the persons in whom the title vests, and

Honorable George H. Sheppard, Page 5

such questions may affect the amount of the
tax and the person whose estate shall be
chargeable with it; but when those questions
are finally determined, their determination
relates to the time of the decedent's death.
No changes of title, transfers, or agreements
of those who succeed to the estate, among them-
selves or with strangers, can affect the tax.
All questions concerning it must be determined
as of the decedent's death.

" . . . The statute requires all of the prop-
erty of the estate to be appraised at its fair
market value. The value of the estate which
passes is the value so ascertained less the in-
debtedness of the decedent and the expenses of
administration. Whatever litigation may occur
between those who succeed to the estate as to
their respective rights, or between different
claimants of interests, cannot affect such
value. The fair market value so ascertained
is the basis upon which the amount of the tax
must be fixed. Unjust claims may be made against
those succeeding to the estate, and they may be
put to great expense in defending their property,
but the value of the property or of their re-
spective interests in the property is not there-
by affected."

Crane v. Mann, 162 S.W. (2) 117 (writ of error re-
fused), is the only case in Texas passing on the deductibil-
ity of an amount paid in compromise of a will contest. In
refusing the deduction, the Court said:

" . . . Regardless of the agreement which brought
it about, the fact remains that the will of the
decedent was probated and by the terms of it the
appellant received all of the estate. Without
probating of the will she would have got no part
of the estate. By agreeing for the contestant
to take a part of the estate which the will gave
her, she purchased her peace and thereby secured
unquestioned title to the balance."

Honorable George H. Sheppard, Page 6

In re Westburn's Estate, 152 N.Y. 93, 46 N.E. 315, concerned a claim for deduction of attorney's fees incurred by the successful contestants of the will. The Court said:

"It was not a claim existing against the decedent or his property. The tax imposed by the statute is upon the interests transferred by will or under the intestate law of the state. The devolution of the property and the right of the state have their origin at the same moment of time. The ascertainment of the value of the taxable interest and the fixing of the tax necessarily takes place subsequent to the death. But the guide is the value at the time of the death, when the interests were acquired. The fact that appellants were put to expense in ascertain their rights, and were embroiled in expensive litigation to obtain them, was their misfortune. It did not diminish the value of the interests which devolved upon them on Westburn's death. It was a loss, but a loss to their general estate. It did not prevent their receiving the whole interest transmitted to them." (Emphasis ours)

The attorneys fees were not incurred by the administrator and are not, therefore, allowable as an expense and cost of administration. The obligation for these fees was not created by the decedent and cannot be considered a charge against him or his estate. It is true that Mrs. Edwards was put to an expense, but that was an expense in ascertaining her right to receive any part of the estate. She takes, if at all, under the conveyance of April 27, 1940. She actually received property worth $186,166.91, and title to that property vested in her upon execution and delivery of the transfer by Edwards. She exercised dominion and control over that entire amount, and disposed of the part of it conveyed to the attorneys. Had the matter been a will contest, which she seems to have contemplated should it have become necessary, there is no question that she would not have been entitled to a deduction of attorney's fees. The fact that the contest took another form cannot alter the situation.

Therefore, it is our opinion that the attorney's fees in question should not be deducted before computing the tax. The entire amount received by Mrs. Edwards under the conveyance is the basis of the tax. Any other rule would permit litigating elements to consume an entire estate, completely defeating the State's right to taxes.

We return herewith your file on this estate.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By
Arthur L. Moller
Assistant

ALM:ff
Encl.



APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN